Parker, J.
I am of opinion that the chancellor , ought not to have decreed that the appellant should refund the sum of money received by him under the decree of May 1823, without further enquiry as to the paymem 0f the debt from Ryan to George Eippen Sf Co. by directing an issue, or otherwise.
There are several circumstances in the case, even independent of the admissions of Ryan, which render it highly probable that the debt might not have been paid. If it was doubtful how far his answer was evidence against the appellee (who, in his bill of review, charges collusion and calls upon him to answer) he might, upon the trial of an issue, be examined as a wdt- \ ness ; and on the same trial the books and papers of the firm of George Kippen Sf Co. might be produced, if required by the appellee, and would no doubt afford persuasive evidence the one way or the other.
The letters referred to in the bill seem to me not to be sufficiently authenticated, for I regard M’ Cleland’s statement as no part of the case, and do not think that the answer of Lyle can be fairly considered as an ad- . mission of their genuineness. I am moreover doubtful how far* if genuine, they ought to be received in evidence. The disclosure of these letters by the attorney seems to me to have been without the consent of the client, and to some extent, at least, they were matters of professional confidence. Parker v. Carter, 4 .Munf. 273. If the order to dismiss a suit is not to be so regarded, the statement to an attorney that the debt has been paid is as much under the seal of professional confidence as any other communication. Nor does it appear that it was ever divulged before, unless wre receive M'Cleland's statement of what took place between Saunders and himself concerning the settlement before an arbitrator; and I think it clear that his evidence, taken at the bar of the court, without notice, and at large upon the hearing, ought not to have been *75 received. 2 Mad. Ch. Pract. 435, 6. Graves v. Budgel, 1 Atk. 444.
But it is said, on the authority of the case of Fenwick v. Reade, 1 Meriv. 114. that an attorney submitting to produce title deeds in his possession, which, if ad-mined by the principal to be in his custody, he would be compelled to produce, may, as standing in the situation of the principal, be also compelled to do so. This may be admitted, and is perhaps consistent with the cases of Wright v. Mayer, 6 Ves. 280. and Stratford v. Hagan, 2 Ball & Beatt. 164. But there appears to me to be a striking difference between the production of such deeds, and the communication of any fact disclosed in professional confidence. The client himself could not be compelled to discover such communications, for if he could, the reason of the rule which is meant to allow unrestrained intercourse between client and attorney, would be violated, and its object frustrated.
I therefore think that this decree ought to be reversed, and the case sent back with directions to order an issue to be tried before a jury, to ascertain the fact of the payment of the debt by Ryan, in the trial of which issue the circumstance that the suit was directed to be dismissed may, if not admitted, be proved; leaving to the judge the questions which may arise on the admissibility of other testimony.
Tucker, P.
The first and most important question in this case is whether the letters from Lyle to M’Cleland are evidence in the cause. The first objection to them is based upon the rule that an attorney at law will not be permitted to violate professional confidence. But several things must concur to bring a case within the rule. The matter must have been one of professional confidence: it must have been at the time a secret, for if known to all the world there is no reason for *76 farther concealment: the disclosure must be in invitwn, as ^ respects the client: and lastly, if it might be forced from the client by the rules of the court, pari ratione it may be drawn from the attorney. In this case> every one of these ingredients is wanting. First, the direction by letter to dismiss the suit was not a matter of professional confidence, though it might have been made so, if, before compliance, it had been countermanded. For an order to dismiss a suit requires an act to be done which in itself implies, and in its execution operates, a disclosure of the order itself, since the attorney could not properly dismiss without authority. It was not, then, a'matter of professional confidence. Secondly, if it had been, it had long before been divulged at the settlement between M'Cldand and Samiders before an arbitrator. Thirdly, it is not in invitum; for the defendant, in his answer, expressly disavows any complaint of disregard of professional confidence. “For,” says he, “if it can be shewn that this debt was paid before, this respondent will refund the money he has received, with as much pleasure &c.” The obvious meaning of which is, that he will feel pleasure in repaying what justice demands, if it can be shewn he had improperly received it, even though the fact should be ascertained by a breach of professional confidence. Lastly, if the plaintiff would have had a right to demand the production of these letters had they been in the possession of the defendant, (about which there can be no reasonable doubt) it would seem perfectly clear that the attorney might with propriety produce them, and indeed be compelled to do so. The case of Wright v. Mayer, before lord Eldon in 1801, 6 Ves. 282. seems indeed to hold a different doctrine. But the case is unsatisfactorily reported; and in 1816, in the case of Fenwick v. Reade, 1 Merivale 114. the same able judge decided, that an attorney submitting to produce title deeds of his client in his pos *77 session as the court should direct, might be called upon to produce them, if the principal could himself have been called upoif to do so. This seems to me good sense and sound reason. I am therefore of opinion, that in reading these letters, there is no violation of that professional confidence which it was the object of the rule to respect and maintain.
Another objection has been made at the bar, to the sufficiency of the proof that these letters were written by Lyle. If M’ Cleland’s affidavit be read, there can be no doubt of it. It is objected to, however, for want of notice &c. and this objection may be sound, unless we take it that the defendant (not the plaintiff, as the record has it, which would be wholly unmeaning) had agreed to read it as if regularly taken. This I doubt whether we can do, however strongly we may suspect that there is a mistake in the record. But M’ Cleland's testimony seems to me unnecessary, as the defendant does not contest or call for proof of the letters, but endeavours to explain away the supposed mistake in them. In this ' state of the case I shall take them as proved, and the rather, as, in case of their rejection, the cause would necessarily go back for further proof.
Taking the letters as evidence, the result must be the affirmance of the decree. The presumption of payment from length of time is complete, and is sustained by plenary proof. The commencement of a suit to foreclose, the failure for nearly 20 years to file a bill, the order to dismiss the suit, the memorandum of the debt having been paid by H. Rose, leave the court no alternative but to presume the payment. The answer of Ryan, being no evidence, between the contending incumbrancers, cannot affect this conclusion. And the testimony of judge Cabell, so far from shewing that the debt was due, furnishes perhaps a clue to the order of dismission. Strongly impressed with the injustice of the demand against Philip Ryan, who had never got a *78 good title for the land, he may have communicated his v’ews to Lyle, who may have acquiesced in them,* and sought and obtained payment in some way from' the heir of the original debtor. So it is, we have Lyle's segment nearly thirty years ago, that the debt was paid; and it is now too late to ascertain the mode and circumstances of the payment. The decree must be affirmed.